**Yerli Alejandro GARZON–ZAPATA, aka Yerli A. Garzon, Petitioner,**

v.

**Eric H. HOLDER Jr., United States Attorney General.[1]**

No. 08–6095–ag.

United States Court of Appeals, Second Circuit.

Aug. 19, 2009.

---

[1]. Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Eric H. Holder Jr. is automatically substituted for former Attorney General Michael B. Mukasey as respondent in this case.

Joshua E. Bardavid, New York, NY, for Petitioner.

Tony West, Assistant Attorney General; Russell J.E. Verby, Senior Litigation Counsel; John D. Williams, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, D.C., for Respondent.

PRESENT: ROGER J. MINER, JOSÉ A. CABRANES and RICHARD C. WESLEY, Circuit Judges.

### SUMMARY ORDER

Yerli Alejandro Garzon–Zapata, a native and citizen of Colombia, seeks review of a November 18, 2008 order of the BIA, affirming the March 15, 2006 decision of Immigration Judge ("IJ") Alan A. Vomacka, which denied his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Yerli Alejandro Garzon–Zapata,* No. A97 519 759 (B.I.A. Nov. 18, 2008), *aff'g* No. A97 519 759 (Immig. Ct. N.Y. City Mar. 15, 2006). We assume the parties' familiarity with the underlying facts and procedural history of this case.

When the BIA does not expressly "adopt" the IJ's decision, but its brief opinion closely tracks the IJ's reasoning, we consider both the IJ's and the BIA's opinions "for the sake of completeness." *Zaman v. Mukasey,* 514 F.3d 233, 237 (2d Cir.2008). We review the agency's factual findings under the substantial evidence standard. *See* 8 U.S.C. § 1252(b)(4)(B); *see also Corovic v. Mukasey,* 519 F.3d 90, 95 (2d Cir.2008). We review *de novo* questions of law and the application of law to undisputed fact. *Salimatou Bah v. Mukasey,* 529 F.3d 99, 110 (2d Cir.2008).

 The agency reasonably concluded that Garzon–Zapata failed to demonstrate that he had suffered past persecution or that he had a well-founded fear of persecution in Colombia on account of a protected ground. The BIA has defined persecution as "a threat to the life or freedom of, or the infliction of suffering or harm upon, those who differ in a way regarded as offensive." *Matter of Acosta,* 19 I. & N. Dec. 211, 222 (B.I.A.1985). In order to constitute persecution, the alleged harm must be sufficiently severe, rising above "mere harassment." *Ivanishvili v. U.S. Dep't of Justice,* 433 F.3d 332, 341 (2d Cir.2006). "[A]n asylum applicant cannot claim past persecution based solely on the harm that was inflicted on a family member on account of that family member's political opinion or other protected characteristic." *Tao Jiang v. Gonzales,* 500 F.3d 137, 141 (2d Cir.2007) (citing *Melgar de Torres v. Reno,* 191 F.3d 307, 313 n. 2 (2d Cir.1999)); *see also Shi Liang Lin v. U.S. Dep't of Justice,* 494 F.3d 296, 308 (2d Cir.2007). We have recognized, however, that there may exist circumstances where harm to an applicant's family member in conjunction with other factors may be sufficiently severe to amount to past persecution. *See Jorge–Tzoc v. Gonzales,* 435 F.3d 146, 150 (2d Cir.2006) (recognizing that harm to a family member may constitute persecution to a child because children are dependent on their family and

community); *see also Tao Jiang,* 500 F.3d at 141–42. In such cases, the "harm suffered by family members in combination with other factors ... would presumably only be [persecution] where ... the applicant not only shares (or is perceived to share) the characteristic that motivated persecutors to harm the family members, but was also within the zone of risk when the family member was harmed, and suffered some continuing hardship after the incident." *Tao Jiang,* 500 F.3d at 141–42 (citing *Jorge–Tzoc,* 435 F.3d at 150).

In *Jorge–Tzoc,* we concluded that a Mayan Guatemalan asylum applicant who was not present at or directly victimized by a massacre of his family members and neighbors during a pervasive campaign against Mayans by the Guatemalan army may have nonetheless experienced persecution based on the combination of: (1) his having witnessed his cousin's bullet-ridden body; (2) his young age at the time (approximately seven years old) and thus his dependency on family and community; (3) his mother's fear of going out of their home to get food; (4) his forced relocation with other family members to a single room in another village, where they struggled to survive; and (5) the loss of his father's land and animals. 435 F.3d at 150. Although Garzon–Zapata was presumably in the "zone of risk" when members of the Revolutionary Armed Forces of Colombia ("FARC") shot his father in front of him when he was four years old, *Tao Jiang,* 500 F.3d at 141–42, unlike the applicant in *Jorge–Tzoc,* Garzon–Zapata did not suffer any continuing hardship after his father's death, and he did not share the characteristic that motivated his father's persecutors, 435 F.3d at 150.

Indeed, neither Garzon–Zapata nor his mother had any problems in Colombia for eight years after the death of his father. Moreover, contrary to Garzon–Zapata's claims that after his father's death, he lost his property and was unable to attend public school while in hiding, his mother testified that they had sold, not lost, their property and that Garzon–Zapata had attended school for at least one year. Furthermore, there is no indication that he and his mother lived in hiding in Colombia after his father's death. Thus, unlike in *Jorge–Tzoc,* Garzon–Zapata failed to identify any continuing hardship that he and his family suffered after the death of his father that would rise to the level of persecution. *See Jorge–Tzoc,* 435 F.3d at 150; *see also Tao Jiang,* 500 F.3d at 141–42.

In addition, unlike in *Jorge–Tzoc,* where the Mayan applicant shared the ethnicity that motivated his family's persecutors, *see* 435 F.3d at 150, Garzon–Zapata asserted that he was threatened because of his relationship to his father and did not claim to share his father's characteristic of business and land owner that purportedly motivated his father's persecutors, *see Tao Jiang,* 500 F.3d at 141–42. Accordingly, the agency reasonably found that Garzon–Zapata did not demonstrate that he suffered past persecution on account of a protected ground. *Id.*

■ Absent past persecution, an applicant may establish eligibility for asylum by showing that he subjectively fears persecution on account of an enumerated ground and that his fear is objectively reasonable. *Ramsameachire v. Ashcroft,* 357 F.3d 169, 178 (2d Cir.2004). In this case, the agency reasonably found that Garzon–Zapata failed to establish a well-founded fear of future persecution, relying, in part, on the fact that he and his mother remained unharmed in Colombia for eight years after the FARC purportedly killed his father and threatened him. *See Melgar de Torres,* 191 F.3d at 313 (finding that where asylum applicant's mother and daughters continued to live in petitioner's native

country, claim of well-founded fear was weakened); *Lie v. Ashcroft*, 396 F.3d 530, 537 (3d Cir.2005) (stating that fear of persecution is diminished when "family members remain in petitioner's native country without meeting harm"). The agency also reasonably found that Garzon–Zapata's claim of a well-founded fear of persecution on account of his family membership was undercut by the fact that the FARC, who purportedly killed his father for refusing to pay them extortion money, had not contacted, threatened, or harmed his mother and other family members during the time that they sold his father's property. *See Melgar de Torres*, 191 F.3d at 313.

Ultimately, the agency did not err in finding that Garzon–Zapata failed to establish past persecution or a well-founded fear of persecution. Accordingly, the agency reasonably denied his applications for asylum, withholding of removal, and CAT relief.[2] *See Paul v. Gonzales*, 444 F.3d 148, 156 (2d Cir.2006) (recognizing that withholding of removal and CAT claims necessarily fail if the applicant is unable to show the objective likelihood of persecution needed to make out an asylum claim and the factual predicate for the claims is the same); *cf. Kyaw Zwar Tun v. INS*, 445 F.3d 554, 567 (2d Cir.2006) (providing that "torture requires proof of something more severe than the kind of treatment that would suffice to prove persecution").

For the foregoing reasons, the petition for review is DENIED. As we have completed our review, any stay of removal that the Court previously granted in this petition is VACATED, and any pending motion for a stay of removal in this petition is DISMISSED as moot. Any pending request for oral argument in this petition is DENIED in accordance with Federal Rule of Appellate Procedure 34(a)(2), and Second Circuit Local Rule 34(b).

---

2. Contrary to the government's argument, we do not find that Garzon–Zapata abandons his challenge to the agency's denial of his application for CAT relief.

